**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALPHONSO BRUNSON, | Case No. 2:17-cv-6310 (BRM) |
| Petitioner, | |
| v. | **OPINION** |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | |
| Respondents. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is prisoner Alphonso Brunson's ("Petitioner") petition for a writ of habeas corpus (the "Petition") (ECF No. 1) brought pursuant to 28 U.S.C. § 2254.[1] For the reasons set forth below, Petitioner's petition for writ of habeas corpus is **DENIED**.

---

[1] On October 5, 2021, Petitioner also filed a letter with the Court alleging a claim of retaliation. (ECF No. 17.) A habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement in prison. *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973). Federal habeas corpus review is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002). Petitioner appears to be alleging that he is being transferred to a new prison in an act of retaliation. That claim does not attack the legality of his judgment or conviction. Therefore, his claims are not properly asserted in a habeas petition brought under 28 U.S.C. § 2254, but rather must be pursued through the filing of a civil rights action pursuant to 42 U.S.C. § 1983. *See, e.g., Leamer*, 288 F.3d at 542 ("[W]henever the challenge ultimately attacks the 'core of habeas'—the validity of the continued conviction or the fact or length of the sentence—a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate . . . .")

I.    BACKGROUND

The Court provided the factual and procedural background of this case in its previous order

to show cause as follows:

> In his Petition, Petitioner asserts the following timeline for his
> claims. On July 30, 1990, Petitioner [was] sentenced to
> imprisonment for life plus fifty years, with a parole ineligibility
> period of fifty-one years for convictions of murder, felony murder,
> first-degree robbery, second-degree burglary, and second-degree
> attempted burglary. (ECF No. 1 at 2, 54.) Petitioner appealed, but
> the Superior Court of New Jersey, Appellate Division affirmed his
> conviction and sentence on November 29, 1994. (*Id.*) *See State v.
> Brunson*, No. A-278-90T4 (N.J. Super. Ct. App. Div., Nov. 29,
> 1994.) The New Jersey Supreme Court denied certification on April
> 27, 1995, and Petitioner did not file a petition for certiorari. *See State
> v. Brunson*, 140 N.J. 327 (1995).
>
> On January 18, 1996, Petitioner filed a petition for post-conviction
> relief ("PCR"). (ECF No. 1 at 55.) Petitioner's PCR was denied on
> April 23, 1996. (*Id.*) Petitioner appealed, and the Appellate Division
> affirmed the denial of his PCR on May 6, 1998. (*Id.* at 56.) The New
> Jersey Supreme Court initially denied certification on September 11,
> 1998, and, after Petitioner filed a late petition for certification
> regarding additional claims, the New Jersey Supreme Court denied
> certification once again on April 7, 1999. (*Id.* at 56.) Following the
> conclusion of his PCR, Petitioner filed in this Court a first habeas
> petition on October 4, 1999. (*Id.*) Judge Politan denied that habeas
> petition on November 28, 2000.[2] (*Id.* at 53.) Petitioner appealed, and

---

[2] The Court notes that Petitioner had a previous habeas petition which was denied on the merits.
Pursuant to 28 U.S.C. § 2244(b)(3)(A), this Court normally lacks jurisdiction over second or
successive habeas petitions which are filed without leave from the Court of Appeals. *See, e.g.,
Burton v. Stewart*, 549 U.S. 147, 152 (2007); *Blystone v. Horn*, 664 F.3d 397, 412 (3d Cir. 2011).
However, having reviewed the record of Petitioner's previous habeas petition, which was filed
under Docket Number 99-4613, it appears that Petitioner was never given the notice required by
*Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000) (requiring that *pro se* habeas petitioners in § 2254
matters be informed of the requirement that they bring all their claims in a single petition).   *See
also United States v. Miller*, 197 F.3d 644 (1999) (requiring similar notice for federal convicts
seeking relief under 28 U.S.C. § 2255). The Third Circuit has held that, where a *pro se* petitioner's
habeas petition or motion to vacate sentence is denied without the petitioner being given the proper
notice under *Mason* or *Miller*, the denied petition does not count as a first petition for the purposes
of the second or successive petition bar.   *See, e.g., Norwood v. United States*, 472 F. App'x 113,
117 (3d Cir. 2012) (citing *Castro v. United States*, 540 U.S. 375, 383 (2003)). Because it does not
appear Petitioner was given a *Mason* warning in his first petition, that petition does not count for

the Third Circuit denied Petitioner a certificate of appealability on January 31, 2002. (*Id.* at 3.)

Ten years later, Petitioner filed a second PCR petition on January 19, 2012. (*Id.*) On January 2, 2013, the PCR trial court denied Petitioner's second PCR petition, finding that Petitioner's second PCR was time barred, and was in any event without merit. (*Id.* at 115.) Petitioner appealed, and the Appellate Division affirmed on May 26, 2016. (*Id.* at 149.) The Appellate Division, too, found that Petitioner's second PCR was "not timely filed," rejecting Petitioner's argument that he did not discover the basis for his new claims until he read a newspaper article a year before he filed his new PCR petition as the factual bases for Petitioner's claims – certain ethical charges or reprimands a police officer and judge involved in Petitioner's conviction in 1990 – could have been discovered through reasonable diligence long before and that, in any event, these allegations were "irrelevant" to Petitioner's conviction. (*Id.* at 149-50.) Petitioner then filed a petition for certification, which the New Jersey Supreme Court denied on September 23, 2016. *State v. Brunson*, 151 A.3d 973 (N.J. 2016). Petitioner thereafter filed a motion in December 2016 requesting that new DNA testing, based on a method discovered in 2014, be conducted on certain evidence used against him at trial, which apparently remains pending in the state courts. (ECF No. 1 at 3.) Petitioner thereafter filed his current habeas petition and stay request on August 16, 2017. (*Id.* at 5.)

In this matter, Petitioner's conviction became final ninety days after the New Jersey Supreme Court denied certification on direct appeal, when the time for timely filing a certiorari petition expired on July 26, 1995. Because his conviction therefore became final prior to the adoption of AEDPA and the establishment of the one-year limitations period, his one-year statute of limitations did not begin to run until the one-year limitations period went into effect on April 24, 1996. *See, e.g., Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998) (holding that the one year limitations period did not begin to run until April 24, 1996, for those prisoners whose convictions became final prior to the date on which AEDPA went into effect). Because Petitioner filed his first petition for post-conviction relief

---

second or successive petition purposes, and this Court thus retains jurisdiction over his current petition. *Id.*

On June 21, 2018, the Third Circuit Court of Appeals denied Petitioner's application under 28 U.S.C. § 2244 for leave to file a second or successive petition under 28 U.S.C. §2254. *See In re Alphonso Brunson*, No. 18-1469 (3d Cir. June 21, 2018).

prior to April 24, 1996, and this Court has no reason to believe Petitioner's first PCR was improperly filed, Petitioner's one-year limitations period was tolled throughout the entire period that PCR application was pending. Petitioner's PCR petition remained pending until, at the latest, the date on which the New Jersey Supreme Court denied Petitioner's second certification petition on PCR on April 7, 1999. Petitioner's one-year limitations period expired one year later on April 6, 2000. That Petitioner filed his first habeas petition in October 1999 has no effect on the timeliness of Petitioner's current petition as the one year limitations period is not tolled by the filing nor the pendency of a first habeas petition which was dismissed or denied prior to the filing of the current petition. *See Duncan v. Walker*, 533 U.S. 167, 172-82 (2001). Petitioner's current claims, absent some basis for equitable tolling or a later running date of the statute of limitations would therefore be time barred by over seventeen years.

Although Petitioner does not directly make the argument here that his limitations period should receive a later start date than that accorded by the date his conviction became final, it appears that he argued before the state courts that his limitations period for the filing of his second PCR should have been extended because he did not discover the basis for those claims until he read a newspaper article which was published in December 2012 and edited in May 2013. (*See* Document 2 attached to ECF No. 1 at 1.) Even if Petitioner was unaware of the basis for his claims until that article was published in December 2012 or edited in May 2013, that alone is insufficient to warrant a later start date. The issue is not when Petitioner himself became aware of the history of the officer and judge involved in his criminal matter, the issue is instead when Petitioner *could* have discovered the vital facts underlying his claims through the use of due diligence.[3] *See Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir.

---

[3] Petitioner is asserting a *Brady* violation as he claims that prosecutors did not turn over the disciplinary record of the arresting officer. The record contained a reprimand and lawsuit settlement from 1977 arising out of the officer and others beating an individual and covering up that beating. Petitioner argues that the *Brady* violation was a state created impediment to raising his claims, thus entitling him to a later running date, but the same problem arises – if the alleged *Brady* violation did not stand in Petitioner's way because he, through due diligence, could have discovered the information, as he certainly did by the time the news article was edited for the last time in May 2013, then, the *Brady* violation was not actually an impediment to his filing and does not provide him a later filing date. *See, e.g.,* 28 U.S.C. § 2244(d)(1)(B); *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1332-33 (11th Cir. 2008) (to invoke impediment clause as a start date, Petitioner must show that the impediment was causally connected to his failure to timely file his petition). As discussed above, even if this Court gave Petitioner the benefit of the May 2013 date, based either on his claim that he couldn't have discovered the information sooner or that the alleged

2004); 28 U.S.C. § 2244(d)(1)(D). Petitioner has presented no actual argument as to *why* he could not have discovered information regarding the disciplinary history of the trial judge, or the disciplinary and criminal history of the police officer involved in his arrest, all of which are matters of public record, prior to 2012. In any event, the distinction is meaningless for the purposes of the timeliness of Petitioner's current petition as, even if this Court assumed *arguendo* that Petitioner's one year limitations period should run from the date the article was last edited in May 2013, his limitations period would have expired one year later in May 2014 because the state courts found Petitioner's second PCR untimely and therefore improperly filed, and as such it provides no basis for the tolling of Petitioner's one year limitations period. *See Jenkins*, 705 F.3d at 85. Absent equitable tolling, then, Petitioner's current petition is time barred even were he given the benefit of the later start date for the running of the statute of limitations based on the date of the last edit of the article which alerted him to the officer's history.

Petitioner also appears to be asserting that he should receive a later start date for his assertion that he should be permitted to have certain physical evidence from his trial, specifically bloody clothing found in his possession, tested to show that the blood on the clothing did not belong to the victim of whose murder he was found guilty. To the extent that Petitioner would assert that his claim is based on new evidence and should therefore provide a later start date for the running of the statute of limitations, Petitioner runs into essentially the same problem he had in relation to his claim discussed above – even running the one year limitations period from the time he learned of the basis of his claim would not make his current petition timely absent equitable tolling. To that end, the Court first notes that Petitioner was well aware of the existence of blood evidence he wishes to have tested during and after his criminal trial in the early 1990s. Petitioner was also apparently aware that testing of the blood samples in the late 1980s was inconclusive. (*See* ECF No. 1 at 16.) Thus, Petitioner's only basis for suggesting a later start date for the AEDPA limitations period based on his DNA evidence claim would be that Petitioner asserts that DNA testing of the specimens was not available at the time of his direct appeal. In a motion he submitted to the state trial court, however, Petitioner directly admits that New Jersey's post-conviction DNA testing procedure has been available by statute since 2002, long before he sought testing in his current matter. (*See* ECF No. 1 at 175.) Although Petitioner asserts that an

---

*Brady* violation was an impediment to his filing until he learned of the officer's history, Petitioner would still be time barred.

unspecified 2014 DNA testing procedure may be helpful to his cause, he does not explain how or why this new test is relevant or otherwise necessary. As such, Petitioner was clearly aware of the blood evidence in the early 1990s, and DNA testing was available to him as early as 2002.  Even were this Court to grant Petitioner the benefit of the 2002 adoption date of the New Jersey DNA testing statute as the start date of his limitations period, Petitioner's request would be time barred by fifteen years absent some basis for equitable tolling.

. . . .

Petitioner does appear to be presenting an alternative basis for avoiding the limitations period – actual innocence. In *McQuiggan v. Perkins*, 569 U.S. 383, 396-99 (2013), the Supreme Court held that a federal court may reach the merits of an otherwise time barred habeas petition where the Petitioner establishes a gateway claim of actual innocence. To make out this gateway claim, however, a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him" in light of some newly raised evidence. *Id.* at 399; *see also Albrecht v. Horn*, 485 F.3d 103, 126 (3d Cir. 2007). A petitioner does not make out a gateway actual innocence claim simply by asserting that he is innocent, instead he must actually establish his innocence by presenting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented" prior to his conviction. *Hubbard v. Pinchak*, 378 F.3d 333, 339-50 (3d Cir. 2004); *see also McQuiggan*, 569 U.S. at 401 ("the [actual innocence] gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error"). Indeed, so high is the bar for meeting the actual innocence gateway that the Third Circuit has observed that claims of actual innocence have "in virtually every case . . . been summarily rejected." *Hubbard*, 378 F.3d at 341.

In this matter, Petitioner raises the specter of an actual innocence claim in regards to his DNA testing claim. Although Petitioner appears to wish to assert that the DNA evidence would establish his innocence as to the murder charges in parts of his petition, he also directly admits in this petition that, even if the DNA testing resulted in his favor, it "would not constitute 'proof positive'" of Petitioner's innocence. (ECF No. 1 at 15.) Petitioner also readily admits in his petition that, at this time, his DNA claim contains little more than speculation as he contends that neither he nor the Court knows what results the test might yield, to whom the DNA in the blood on the jeans belongs, or what other suspects might be implicated by any

DNA results. (*Id.* at 17.) Petitioner has, at this time, presented no new evidence in support of his innocence whatsoever, instead he speculates as to what may result if a DNA test is conducted and if such a test returns verdicts in his favor. Given the speculative nature of these assertions, the fact that Petitioner at this time has provided no new, reliable evidence sufficient to convince the Court that no reasonable jury could have convicted Petitioner of the crimes of which he was convicted, and Petitioner's own admission that even a positive result in his favor would not prove his innocence, it is clear that Petitioner has failed to meet the high bar required to raise a colorable gateway claim of actual innocence, and as such he is not entitled to evade the habeas time bar on that basis based on the information he has provided in his petition. *McQuiggan*, 569 U.S. at 400-401.

(ECF No. 7 at 2-10.)

On June 18, 2019, the Court denied Petitioner's request for a stay pending exhaustion (ECF No. 1 at 2-3) without prejudice (ECF No. 7). The Court, nonetheless, allowed Petitioner an opportunity to file a brief addressing any other arguments he may have as to the timeliness of his petition, including any further argument he may have for equitable tolling or any other facts he wished the court to consider. (*Id.*)

## II.   LEGAL STANDARD

Petitioner's response to the Court's order to show cause includes an argument about his mental state throughout the course of his pre- and post-trial legal proceedings and his difficulty understanding legal concepts.[4] (ECF Nos. 8 at 4-7.) The Court construes this as an equitable tolling argument on the basis of Petitioner's mental incapacity.

---

[4] Petitioner has appended Dr. Nathaniel J. Pallone, PhD's report dated November 20, 1989, of his mental evaluation of Petitioner which was conducted at the request of Petitioner's then-public defender. (ECF No. 8-1.) Dr. Pallone was primarily tasked with addressing whether Petitioner "acted in a knowing, informed and voluntary manner either at the time of the homicide or in his apparent waiver of *Miranda* rights." (*Id.* at 5.) Dr. Pallone ultimately opined, Petitioner "did not understand the character and nature of his actions on either occasion." (*Id.* at 10.)

All petitions for a writ of habeas corpus brought pursuant to § 2254 are subject to a one-year statute of limitations. *See Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013); *see also Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 (3d Cir. 2013). In most cases, this one-year statute of limitations begins to run on the date on which the judgment became final upon the conclusion of direct review or the expiration of the time for seeking such review including the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court. *Ross*, 712 F.3d at 798; *Jenkins*, 705 F.3d 84; see also 28 U.S.C. § 2244(d)(1)(A). The statute, however, provides for three potential alternative start dates where a petitioner raises certain types of claims: the date on which an impediment to filing an application created by illegal or unconstitutional state action was removed where the impediment prevented the petitioner from filing his claims; the date on which the constitutional right was first recognized by the Supreme Court where the petitioner raises claims based on a newly recognized right which the Supreme Court has made retroactive to cases on collateral review; or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(B)-(D). The one-year habeas limitations period is also subject to statutory tolling which applies during any period during which a "properly filed" application for state collateral review is "pending." *Jenkins*, 705 F.3d at 85 (quoting 28 U.S.C. § 2244(d)(2)). A collateral review petition, however, is not "properly filed" and will not toll the habeas limitations period where that petition is determined to have been untimely filed by the state courts. *Id.*; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414-17 (2005).

Although the habeas limitations period is subject to equitable tolling, equitable tolling "is a remedy which should be invoked 'only sparingly.'" *United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). To receive

the benefit of equitable tolling, a petitioner must show "(1) that he faced 'extraordinary circumstances that stood in the way of timely filing,' and (2) that he exercised reasonable diligence." *United States v. Johnson*, 590 F. App'x 176, 179 (3d Cir. 2014) (quoting *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011)). Excusable neglect is insufficient to warrant equitable tolling. *United States v. Thomas*, 713 F.3d 165, 174 (3d Cir. 2013).

## III. DECISION

Petitioner asks the Court to consider his reliance on prison paralegal and law librarians to assist him throughout the course of his post-conviction litigation. (ECF No. 8 at 4.)

He argues, *inter alia*:

> "Petitioner believed in what the paralegals had informed by stating after the denial of habeas corpus, the only thing left to file was a petition relating to the sentence or either petition for newly discovered material that was withheld by the prosecution, that would have had an impact on the outcome of the verdict, not to file an appeal to the U.S. Supreme Court or any other liaison of the Court, instead Petitioner stayed dormant in his filing until ten (10) years later when it was discovered that the arresting officer Sgt. Fekete was involved in an additional crime of official misconduct in the year of 1977 in the City of New York, petitioner did not have access to these records for they were not of public use, not until ten years later, did the access become available along with the questionable DNA that was used throughout Petitioner's trial for the DNA was a contributing factor in the verdict along with the coerced illegal confession on the date of arrest on January 22nd 1988 to the Edison Police Detectives and Sgt's.

(*Id.* at 4-5.)

As the Court noted in its prior order (ECF No. 7), Petitioner's actual innocence argument is unavailing. Petitioner relies on a purportedly newer type of DNA testing, which he submits could be used to examine DNA on a pair of his trousers which the prosecution entered into evidence at his trial. (ECF No. 10 at 2.) Similarly, the Court is not convinced by Petitioner's argument for

equitable tolling based on his mental impairment, which he describes as "mental and physical psychosis." (ECF No. 8 at 4.)

Courts considering equitable tolling arguments based on mental incompetence, are to consider the following non-exclusive factors:

> (1) [whether] the petitioner [was] adjudicated incompetent and, if so, when did the adjudication occur in relation to the habeas statutory period; (2) [whether] the petitioner [was] institutionalized for his mental impairment; (3) [whether] the petitioner handled or assisted in other legal matters which required action during the federal limitations period; and (4) [whether] the petitioner supported his allegations of impairment with extrinsic evidence such as evaluations and/or medications.

*Champney v. Sec'y Pa. Dep't of Corr.*, 469 F. App'x 113, 118 (3d Cir. 2012) (citations omitted).

Here, Petitioner has not supplied any information to suggest he was ever adjudicated incompetent. Petitioner submits he was involuntarily committed to a state mental hospital in 1982, when he was approximately eleven years old. (ECF No. 8 at 6.) The Court notes Petitioner has not submitted any objective evidence of his having been committed when he was eleven years old. As for the next factor, Petitioner, who is *pro se*, appears to have been involved in his legal proceedings during the federal limitations period. Petitioner proffers he relied on prison paralegals' advice not to proceed before the Supreme Court and other tribunals once his first federal habeas petition was denied. (ECF No. 8 at 4.) Ultimately, however, Petitioner made the decision not to pursue any further litigation for upwards of a decade. Notwithstanding the possibility Petitioner may have been generally confounded by the complexities of post-conviction proceedings, his decision to heed the prison paralegals' advice appears to have been a result of his determination that it was sound advice rather than a symptom of his purported mental incompetence. Moreover, Petitioner asserts he was prompted to challenge his conviction after he "stayed dormant in his filing until ten (10) years later when it was discovered that the arresting officer Sgt. Fekete was involved in an

additional crime of official misconduct in the year of 1977 in the City of New York." (ECF No. 8 at 4-5.) Consequently, Petitioner's own account of what re-kindled the post-conviction litigation long after the federal limitations period expired, minimizes his claim of failing to comply with the statute of limitations because of any mental shortcoming.

Further, Petitioner has not submitted any extrinsic evidence to support his mental incompetence argument, other than Dr. Pallone's more than thirty-year old evaluation of Petitioner's mental state at or around the time of the murder and subsequent police interrogation. Dr. Pallone's evaluation was based in part on Petitioner's medical history, which included being medicated with Thorazine, an anti-psychotic drug, in 1982, when he was eleven years old. (ECF No. 8-1 at 6.) Once again, Petitioner, has not submitted any objective evidence of his having been prescribed anti-psychotic medication when he was eleven years old. Moreover, Petitioner has not supplied any evidence of his mental state while incarcerated for the murder conviction and particularly during the more than ten-year period when he did not engage in any litigation challenging his murder conviction. Even if the Court were to consider Dr. Pallone's report from 1989 as credible evidence of Petitioner's mental state around the time period which the offense was committed, it does not offer any insight into Petitioner's mental state for the last thirty-plus years. *See Harper v. D'Llio*, Civ. A. No. 14-5800, 2014 WL 6611389 at *3 (D.N.J. Nov. 21, 2014) (denying equitable tolling on the basis of Petitioner's mental incompetence citing to "complete lack of medical record showing his continuous psychiatric treatment and continuous consumption of mental health medications during the nine-and-a-half-year period at issue")

Consequently, it appears that Petitioner's current habeas petition is time barred and he has provided no basis for the equitable tolling of the statute of limitations.

## IV.    CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, therefore, this Court will not issue a certificate of appealability

## V.    CONCLUSION

For the reasons discussed above, Petitioner's habeas petition is **DISMISSED** as time-barred. An appropriate order will follow.

Dated:  October 7, 2021                                  */s/ Brian R. Martinotti*
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**